W. H. Jones and Company v. Commissioner.
W. H. Jones & Co. v. Commissioner
Docket No. 19662.
United States Tax Court
1949 Tax Ct. Memo LEXIS 145; 8 T.C.M. (CCH) 618; T.C.M. (RIA) 49165; June 24, 1949
*145 Upon the facts, held, the amounts of $5,000 and $1,500 paid by petitioner in the taxable year 1944 to its president and vice-president, respectively, constituted reasonable compensation for services which each of them actually rendered to petitioner, and are properly deductible under section 23(a)(1)(A) of the Internal Revenue Code. Stanley Worth, Esq., for the petitioner. Paul E. Waring, Esq., and Sanford M. Stoddard, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves deficiencies in declared value excess-profits tax and excess-profits tax in the respective amounts of $688.54 and $3,858.63 for the taxable year ended November 30, 1944. The sole contested issue is whether the respondent erred in disallowing a claimed deduction *146 of $5,000 on account of salary paid to L. B. Jenkins and $1,500 on account of salary paid to Mary Tapp Jenkins, president and vice-president, respectively, of petitioner. Findings of Fact Petitioner is a corporation with its principal office in Pink Hill, North Carolina. Its income and excess-profits tax returns were filed with the collector of internal revenue for the district of North Carolina. Since its organization in 1938 and during the taxable period involved petitioner operated a general mercantile business. Its customers were principally farmers, and its sales included fertilizer, livestock, hardware, seeds, feed, groceries and equipment. Its merchandise et cetera were usually sold on a time payment basis, and as security it generally took a crop lien or chattel mortgage. Petitioner's capital stock was owned in equal amounts by L. B. Jenkins, president, his wife, Mary Tapp Jenkins, vice-president, W. H. Jones, secretary and treasurer, and his wife, Lula B. Jones, assistant secretary and treasurer. At a meeting of petitioner's board of directors held on November 9, 1938, a resolution was unanimously adopted fixing the salaries of its officers as follows: "L. B. Jenkins: *147 A salary of $5,000.00 for his services as President and Director and to compensate for furnishing working capital during the year. "Mary Tapp Jenkins: A salary of $1,500.00 for her services as Vice-President and director and assisting in the financing and accounting during the year. "W. H. Jones: A salary of $5,000.00 for his services as Secretary-Treasurer and Director, assisting in furnishing working capital, and management during the year. "Lula B. Jones: A salary of $1,500.00 for her services as Assistant Secretary-Treasurer, assisting in furnishing working capital and management during the year." The salaries fixed by the above resolutions were paid by the corporation during the taxable period involved herein. The bylaws of petitioner provide in part as follows: "ARTICLE IV "Duties of Officers "Section 1. The president shall preside at all meetings of the Board of Directors, shall see that all orders and resolutions of the Board of Directors are carried out, execute all conveyances contracts and agreements authorized by the Board of Directors, sign all certificates of stock and generally see that all the officers and agents of the corporation perform their duties. *148 He shall assist the secretary-treasurer, whose duties are hereafter designated in directing the manner and method employed by said corporation in carrying on its business. "The secretary-treasurer shall perform the duties usually performed by a secretary and treasurer and as such shall collect, receive and hold moneys of the corporation, sign all checks and negotiable instruments, execute lien bonds and keep a full and accurate account of the receipts and disbursements of the corporation and render a full accounting at each stockholders meeting and at the meetings of the board of directors, when requested. All contracts, notes and obligations other than checks drawn by the corporation may also be signed by the president, but deeds or mortgages shall be signed by the president and the secretary-treasurer. * * *." The vice-president and assistant secretary-treasurer were clothed with powers similar to those of the president and secretary-treasurer in the absence of such officers. Petitioner's gross sales during the taxable period involved were $437,614.56, and its adjusted net income was $46,766.50. The total compensation paid to its four officers and directors was $13,000. It *149 had six to eight employees, none of whom received in excess of $2,500 per annum. Its total employee payroll was $21,477.04. L. B. Jenkins and Mary Tapp Jenkins possessed considerable independent means and their combined net worth in 1944 was in excess of one million dollars. They resided at Kinston, North Carolina, a distance of approximately 15 miles from the principal office of petitioner. They were both interested in several other businesses. L. B. Jenkins was president of the L. B. Jenkins Company, from which he received a salary of $10,000. This business was owned by L. B. Jenkins, his wife, Mary Tapp Jenkins, and the latter's sister. Other businesses in which L. B. Jenkins and his wife had an interest are the Carolina Warehouse and the Jenkins Jones Motor Company. L. B. Jenkins also owned a radio station at Bowling Green, Kentucky. He received no salary from the radio station. The nature of petitioner's business required a large amount of working capital to carry the accounts and notes of its customers during the growing season. Loans to customers in excess of $4,000 required the approval of either L. B. Jenkins or, in his absence, Mrs. Jenkins. While W. H. Jones had the *150 immediate supervision of petitioner's business at Pink Hill, he had daily contacts with L. B. Jenkins or Mary Tapp Jenkins by telephone. L. B. Jenkins went to the Pink Hill office on an average of once a week. He purchased livestock, hardware and other equipment needed to supply petitioner's customers. When supplies and materials were difficult to obtain because of shortages incident to the war and priority regulations, L. B. Jenkins was able to locate and obtain the supplies. When gasoline rationing interfered with petitioner's hauling of merchandise, Jenkins was able to procure additional allotments. Mary Tapp Jenkins held an A.B. degree from Trinity College and an M.A. degree from Columbia University. After teaching school for several years, she was office head of the L. B. Jenkins Company. She was experienced in installing bookkeeping systems. She set up the original books of petitioner and supervised the accounting. She was frequently consulted about petitioner's affairs, and, in the absence of Jenkins, rendered decisions on major problems or questions of policy. She visited the petitioner's office infrequently. On petitioner's income tax return for the taxable year 1944, *151 it claimed a deduction of $13,000 for compensation paid to the four officers, as follows: L. B. Jenkins, President
$5,000.00
Mrs. L. B. Jenkins, Vice-President
1,500.00
W. H. Jones, Sec.-Treas.
5,000.00
Mrs. W. H. Jones, Asst. Sec.-Treas.
1,500.00 The respondent disallowed the entire amount claimed as a deduction for salary paid to L. B. Jenkins and his wife, Mary Tapp Jenkins. In his deficiency notice the respondent explained the disallowance as follows: "Salaries paid to L. B. Jenkins and Mary Tapp Jenkins in the amounts of $5,000.00 and $1,500.00 respectively are disallowed for the lack of evidence that such salaries were paid for services actually rendered." The amounts claimed by petitioner as a deduction for salaries paid to W. H. Jones and Lula B. Jones were allowed by the respondent in full. During the taxable year 1944 L. B. Jenkins and Mary Tapp Jenkins rendered valuable services to petitioner. The amount of $5,000 paid by petitioner to L. B. Jenkins and the amount of $1,500 paid by petitioner to Mary Tapp Jenkins in the taxable year 1944 were reasonable compensation for the respective services actually rendered by each of them in that year *152 to that corporation. Opinion The single issue is whether the respondent erred in disallowing petitioner a deduction of any part of the respective amounts paid to its president and vice-president as salary for services in the taxable year 1944. The respondent contends that L. B. Jenkins and Mary Tapp Jenkins devoted only a negligible portion of their time to petitioner's business and the services each performed for petitioner did not exceed those that a principal stockholder might be expected to give to a corporation. From this premise the respondent argues that such payments as petitioner made to those individuals were in the nature of a distribution of its profits. We do not agree. The evidence satisfactorily establishes that both Jenkins and his wife were intelligent, competent and forceful business executives. Each devoted such time and performed such duties as the character of the petitioner's business required. The services they rendered were valuable and substantially contributed to the success of the business. Upon the entire record we have found as a fact that the amounts paid by petitioner to L. B. Jenkins and Mary Tapp Jenkins in the taxable year were reasonable compensation *153 for services each actually rendered to petitioner. The amounts so paid constitute proper deductions under section 23 (a)(1)(A) of the Internal Revenue Code. Petitioner's contention is sustained. Decision will be entered under Rule 50.